IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:23-CV-12-M-BM

| ROSE MARIE EDWARDS BAKER R DUNN JR., | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER AND MEMORANDUM AND RECOMMENDATION** |
| v. | ) ) ) | |
| ROBERT A. HOLDEN, | ) ) | |
| Defendant. | ) ) | |

This *pro se* case is before the court on the application [DE-1] filed by plaintiff Rose Marie Edwards Baker R Dunn Jr. ("plaintiff") to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1) ("application") and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), respectively. These matters were referred to the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(b)(1).

The court finds that plaintiff has demonstrated appropriate evidence of inability to pay the required court costs, and the application to proceed i*n forma pauperis* will be allowed. However, based on the court's frivolity review and for the reasons set forth below, it is recommended that plaintiff's complaint [DE-1-1] be dismissed.

**ORDER ON *IN FORMA PAUPERIS* MOTION**

To qualify for *in forma pauperis* status, a person must show that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [herself] and dependents with the necessities of life." *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted). The court has reviewed plaintiff's application and finds that she has adequately demonstrated her inability to prepay the required court costs.

Her application to proceed *in forma pauperis* [DE-1] is therefore ALLOWED.

## MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint [DE-1-1], as ostensibly supplemented and amended by plaintiff's exhibits [DE-1-2 to -1-4] and additional filings [DE-4 to -6], appears to center around a probate dispute related to the last will and testament of Hattie P. Holden Towns ("Mrs. Towns") who is the foster mother of plaintiff and the birth mother of defendant, Robert A. Holden ("defendant"). Many of plaintiff's claims revolve around the disposition of a house and real property allegedly belonging to Mrs. Towns before she died. [DE-1-1].

Specifically, plaintiff's complaint alleges the following:

> Robert continuously telling [sic] that I'm a foster child and that I nor [sic] the rest of the foster children was not on our mom obituary and that there was no will and last testament he continuously telling the men that I have or had relationship with about me starting my period when I was 11 years old and that I'm nasty ([HIPPA]), That my mom did not leave a will and last testament. I kept tell [sic] Robert "Bob" that he could not live on my property at 1500 hat walt lane. He kept repeating that I just can't see him giving his mom [sic] property away. I keep telling him it's no longer mom [sic] property it's my property the youngest and mom could not take and [sic] property with her when she died 2/07/1986. Our mom did remarried [sic] after their father passed away 10/24/1967 to Mr. Vass C. Towns.
> I also know that he built a garage to his property in Zebulon. He built on [sic] in Wendell on our mom [sic] property and that he belong to me know [sic].

[DE-1-1] at 3.

Plaintiff alleges that this court has jurisdiction over her claim pursuant to "Facts, truth and legal document . . . see attachment too Please" [DE-1-1] at 2. On her civil cover sheet, plaintiff marks "Federal Question" as the basis of this court's jurisdiction, but does not otherwise cite any statutes, constitutional provisions, or describe the cause of action. *See* [DE-1-4] (Civ. Cover Sheet). She writes "military" at the top of the right half of her civil cover sheet, which the court

liberally construes as a claim that defendant is, or was, in the military. *Id.*

Plaintiff attaches as an exhibit to her complaint a printout of the Third Amendment to the United States Constitution, which provides that "[n]o Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." *See* [DE-1-2]; *see also* U.S. Const. amend. III.

Plaintiff includes various other exhibits in support of her complaint consisting of printouts from the Wake County CAMA System, showing certain property being owned by the "Hattie P. . . . Holden . . . Heirs" ([DE-1-3] at 1-2) and the obituary of Mrs. Hattie P. Holden,[1] which indicates that "foster daughter[] Rose Marie Ray"[2] was "of the home" at the time Mrs. Hattie P. Holden died (*id.* at 2). Additionally, plaintiff filed numerous documents ostensibly in support of her complaint, including (1) a letter from plaintiff alleging (i) that her mother's, *i.e.*, Mrs. Towns's, name had not been taken off of her mother's property after her mother's death, (ii) that her half-brothers were engaged in tax fraud, and (iii) that plaintiff was the rightful owner of 100% of her mother's property ([DE-4] at 1);[3] (2) a deed for property made in 1960 [DE-5] and a list of the cases before this court, for which the deed is allegedly relevant [DE-5-1]; (3) an affidavit from the Wake County Register of Deeds attesting to the veracity of a deed [DE-6]; and (4) what appears to be a criminal record summary for Kenneth Lamar Holden ([DE-6] at 2).

Plaintiff seeks the following relief:

> The last will and testament of our mom (The late Hattie P. (Holden) Towns) and for him to except [sic] that his mom is my mom too. Plus my mom married Mr. Vass C. Towns and he [sic] their step-father. That I have proof about what I tell him. So since he built one garage in Zebulon that the one that he put on the [sic] belong to

---

[1] The undersigned construes references to "Mrs. Hattie P. Holden" and to "Mrs. Towns" as referring to the same person.
[2] The undersigned construes references to Rose Marie Ray as allegedly referring to plaintiff.
[3] Plaintiff filed what appears to be an identical copy of this document in another case before the undersigned. [DE-10] *Dunn Jr. v. Rogene Earl Holden*, 5:22-cv-00530-M-BM (E.D.N.C. filed Dec. 28, 2022).

3

[sic] because he use some of the money for the rent money with the tenant in my house pay.

[DE-1-1] at 3.

## II. APPLICABLE LEGAL STANDARDS FOR FRIVOLITY REVIEW

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). In such a review, the court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see Denton v. Hernandez*, 504 U.S. 25, 31-33 (1992) (standard for frivolousness). A case is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

In evaluating frivolity specifically, a *pro se* party's pleadings are held to "less stringent standards" than those drafted by attorneys. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, the court is not required to accept the contentions of a party proceeding *in forma pauperis* as true. *Denton*, 504 U.S. at 32. The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. Provided that a party's claims are not clearly baseless, the court must weigh the factual allegations in the party's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a party has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(1)-(2). Case law explains that the factual allegations in the complaint must create more than a mere possibility of misconduct. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (alterations in original) (internal quotation marks omitted)).

A court may also consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (holding that "[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure"); *Hill v. Se. Reg'l Med. Ctr.,* No. 7:19-CV-60-BO, 2019 WL 7041893, at *2 (E.D.N.C. Oct. 21, 2019), *report and recommendation adopted*, No. 7:19-CV-60-BO, 2019 WL 7163434 (E.D.N.C. Dec. 20, 2019), *aff'd*, 818 F. App'x 261 (4th Cir. 2020) (discussing the lack of federal question jurisdiction and diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The presumption is that a federal court lacks jurisdiction in a particular case unless it is demonstrated that jurisdiction exists. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here, the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on . . . the party asserting jurisdiction."). The complaint must affirmatively allege the grounds for jurisdiction. *Bowman*, 388 F.2d at 760. If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). One basis for subject matter

5

jurisdiction, so-called federal question jurisdiction, is that a claim arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

### III. DISCUSSION

Regardless of the labels she ascribes to them, the claims in plaintiff's complaint appear to exclusively relate to state law probate, property, and family law matters. *See Iqbal*, 556 U.S. at 678 (noting mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim for relief under federal law) (quoting *Twombly*, 550 U.S. at 555-57 (alterations in original).

Plaintiff fails to name parties that are citizens of different states, and therefore has not established diversity jurisdiction. [DE-1-1] at 1 (alleging that plaintiff and defendant are both residents of North Carolina). Moreover, for the reasons discussed below, plaintiff has not alleged a viable violation of federal law or that her case requires the resolution of a substantial question of federal law, and therefore she has not established federal question jurisdiction. *See* [DE-1-4] (Civ. Cover Sheet §II.3 ("Federal Question" box marked as basis of jurisdiction, but failing to indicate the nature of suit or describe the cause of action).

**A.    Administration of estate**

As an initial matter, plaintiff raises the issue of her mother's estate and the property that was allegedly bequeathed to her in another case before the undersigned, *Dunn Jr. v. Rogene Earl Holden*, 5:22-cv-00530-M-BM (E.D.N.C. filed Dec. 28, 2022). As noted in that case, "questions regarding probate are issues of state law." *Mayer v. Brandstetter*, No. 7:09-MC-5, 2009 WL 10706610, at *2 (E.D.N.C. July 9, 2009) (citing *Harris v. Zion Sav. Bank & Trust Co.*, 317 U.S. 447, 450 (1943)). "[S]tate probate courts [have jurisdiction over] the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring

6

to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Accordingly, the undersigned RECOMMENDS that any claims related to plaintiff's probate claims be DISMISSED.

**B.     Tax fraud**

The "tax fraud" plaintiff alleges also appears to be nearly identical to the allegations she makes in *Dunn Jr. v. Rogene Earl Holden*, 5:22-cv-00530-M-BM (E.D.N.C. filed Dec. 28, 2022). As noted in that case, with respect to plaintiff's cursory references to "[t]ax [f]raud" ([DE-4] at 1), plaintiff does not cite any federal tax law that has been violated or allege how any federal law supports her right to relief. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27–28, 103 S. Ct. 2841, 2856, 77 L. Ed. 2d 420 (1983) (noting that federal question jurisdiction only exists in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

This cursory reference to "tax fraud" is not enough to satisfy the pleading requirements of Rule 8, let alone the heightened pleading requirements of Rule 9(b) for fraud allegations. *See Dorseli v. Gonzalez*, No. 2:17-CV-37-FTM-99CM, 2017 WL 4286482, at *4 (M.D. Fla. Sept. 27, 2017) ("Federal Rule 9(b) requires that fraud be pled with particularity and the Court otherwise sees no authority that the heightened pleading requirement would not apply to tax fraud cases."); *Forsyth v. Residential Credit Sols., Inc.*, No. A-10-CA-379-JRN, 2011 WL 13272362, at *4 (W.D. Tex. Feb. 23, 2011) (noting with respect to a claim of federal tax fraud, "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations.") (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

7

The "tax fraud" plaintiff alleges appears to be entirely based on the underlying probate dispute, which as discussed above, fails to raise any cognizable federal question. *See Williams v. Madera Super. Ct.*, No. 1:14-CV-01135-LJO-SKO, 2014 WL 5602210, at *2, *5 (E.D. Cal. Nov. 3, 2014), *subsequently aff'd*, 671 F. App'x 431 (9th Cir. 2016) (dismissing plaintiff's claims, including vague allegations of tax fraud, as a part of an underlying state probate dispute); *Davis-Moab v. Jefferson Davis Cnty. Tax Assessor's Off.*, No. 2:19-CV-2-KS-MTP, 2019 WL 13293009, at *1 (S.D. Miss. Jan. 14, 2019), *report and recommendation adopted*, No. 2:19-CV-2-KS-MTP, 2019 WL 13292997 (S.D. Miss. Mar. 15, 2019) (declining to find federal question jurisdiction when "the claims asserted have to do with state tax liens and the recording of deeds"); *contra State ex rel. Jacobson v. Wells Fargo Nat'l Bank*, N.A., 824 F.3d 308, 317–18 (2d Cir. 2016) (finding that state-law tax fraud claims raised a substantial federal question because they depended on the definition of a federal tax exemption for mortgage-backed securities).

Additionally, while there is a federal estate tax, it only applies to estates that exceed a certain total value after including certain additions, such as lifetime taxable gifts, which have not been alleged here. In 1986, the alleged year of Mrs. Towns's death, it only applied to estates that had a total value exceeding $500,000. *See* Barry W. Johnson, *Estate Tax Returns, 1986-1988*, https://www.irs.gov/pub/irs-soi/86-88estr.pdf (last visited August 23, 2024). At the time plaintiff filed the instant complaint, it only applied to estates with a total worth of more than $12,060,000. *See* IRS, *Estate tax*, https://www.irs.gov/businesses/small-businesses-self-employed/estate-tax (last visited August 23, 2024).

Even generously construing plaintiff's complaint [DE-1-1] and supporting exhibits [DE-1-2 to -1-4; DE-4 to -6], there is no indication that Mrs. Towns's estate even came close to a value that would subject it to federal estate tax liability in the relevant year. Additionally, plaintiff makes

8

no allegations that defendant failed to pay any federal taxes due or made any fraudulent representations to the Internal Revenue Service. Accordingly, the undersigned RECOMMENDS that any claims arising out of plaintiff's tax fraud allegations be DISMISSED.

**C.     HIPAA**

Plaintiff's passing reference to "HIPAA," *i.e.*, the Health Insurance Portability and Accountability Act of 1996 ([DE-1-1] at 2), also fails to allege a claim on which relief. Plaintiff alleges that defendant "continuously tell[s] the men that [she] ha[s] or had relationships w[ith] about [her] starting [her] period when [she] was 11 years old and that [she] is nasty (HIPA[A])." *Id*. HIPAA states, in relevant part, that "[a] person who knowingly . . . discloses individually identifiable health information to another person" without authorization shall be fined, imprisoned, or both. 42 U.S.C. § 1320d-6(a)(3), (b); *see Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir.), *cert. denied*, 211 L. Ed. 2d 403 (2021). The undersigned need not determine whether defendant disclosed plaintiff's "identifiable health information," as defined by HIPAA, because even if defendant did so, HIPAA does not provide a private cause of action. *See id.* ("Every circuit court to consider whether HIPAA created a private right to sue has found that it does not."). Accordingly, the undersigned RECOMMENDS that plaintiff's HIPAA claim be DISMISSED.

**D.     Third Amendment**

Finally, to the extent that plaintiff's filings can be construed as attempting to assert a claim under the Third Amendment to the United States Constitution, any such claim must fail. "The Third Amendment prohibits the quartering of a soldier in a house during peacetime without the owner's consent." *Swanson v. King*, No. 7:21-CV-80-BO, 2021 WL 3856454, at *3 (E.D.N.C. Aug. 27, 2021) (citing U.S. Const. amend. III.). "[T]he Third Amendment to the Constitution's right to be free from quartering of soldiers in private homes, unsurprisingly, is not frequently

9

invoked." *SFF-TIR, LLC v. Stephenson*, 262 F. Supp. 3d 1165, 1231 (N.D. Okla. 2017).

Even generously construing plaintiff's filings as alleging that defendant is or was a member of the military, there is no indication that he is being "quarter[ed]" in plaintiff's house on this basis. The dictionary defines "to quarter," as relevant here, as a transitive verb meaning "to provide with lodging or shelter." Quarter, Merriam-Webster, https://www.merriam-webster.com/dictionary/quarter (last visited August 23, 2024). Plaintiff never alleges that anyone "lodged" defendant on her property. "The Third Amendment was a response to the Quartering Acts of 1765 and 1774, in which Parliament authorized British military commanders to requisition private homes as barracks." *Goethel v. U.S. Dep't of Com.*, 854 F.3d 106, 113 n.9 (1st Cir. 2017). There is no allegation that defendant's presence on the relevant property is predicated on his status in the military, or was directed by any military or other governmental authority. *Mitchell v. City of Henderson*, No. 2:13-CV-01154-APG, 2015 WL 427835, at *18 (D. Nev. Feb. 2, 2015) ("[T]he Third Amendment protects private citizens from incursion by the military into their property interests, and guarantees the military's subordinate role to civil authority."). Rather, defendant's alleged presence on the relevant property appears to revolve around questions of probate and family law, which this court cannot consider for the reasons discussed above.

Accordingly, plaintiff's Third Amendment claim fails to state a claim upon which relief may be granted, and the undersigned RECOMMENDS that plaintiff's complaint be DISMISSED.

### IV. CONCLUSION

For the reasons set forth above, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED as frivolous and for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be

served on plaintiff or, if represented, her counsel. Plaintiff shall have until **September 10, 2024**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 23rd day of August, 2024.

_____
Brian S. Meyers
United States Magistrate Judge